UNITED STATES DISTRCT COURT
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

**SUPPRESSED**

FILED
OCT - 2 2024
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES OF AMERICA, )
Plaintiff, )
v. ) No. 4:24-cr-00299-MTS-PLC
DARIONA LAMBERT,
ZHAMONIQ STEVENS,
CHINTANKUMAR PAREKH,
MEHULKUMAR DARJI, and
SITAL SINGH, )
Defendants. )

**SUPERSEDING INDICTMENT**

**COUNT 1**

**Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349)**

**The Conspiracy**

1. Beginning no later than in or around February 2024, and continuing through at least in or around May 2024, in the Eastern District of Missouri and elsewhere, the defendants,

**DARIONA LAMBERT,**
**ZHAMONIQ STEVENS,**
**CHINTANKUMAR PAREKH,**
**MEHULKUMAR DARJI,**
and
**SITAL SINGH,**

voluntarily and intentionally conspired, combined, and agreed with each other and others, known and unknown to the Grand Jury, to commit the following offense against the United States:

(a) Having devised and intended to devise a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses and representations and for the purpose of executing such scheme, and attempting to do

so, did knowingly cause and attempt to cause to be transmitted by means of wire communication in interstate commerce, writings, signs, and signals in the form of interstate electronic communications, in violation of Title 18, United States Code, Sections 1343.

All in violation of Title 18, United States Code, Section 1349.

**Object of the Conspiracy**

2. The primary purpose of the scheme and artifice to defraud and obtain money by means of materially false and fraudulent pretenses, representations, and promises and the conspiracy to commit wire fraud was for the conspirators, including the defendants, to defraud elderly victims throughout the United States, including in the Eastern District of Missouri.

**Manner and Means**

3. The scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and the conspiracy to commit wire fraud were carried out by the conspirators in the following manner:

4. Conspirators contacted elderly victims through telephone calls and electronic messages and made false representations in order to induce victims to use their savings and retirements funds to purchase gold bars and gold coins, which the victims then gave to couriers working on behalf of the conspiracy.

5. Conspirators told victims that their financial accounts had been compromised, and that the victims needed to transfer funds to conspirators in order to maintain account security, transfers that sometimes took the form of liquidating accounts in order to purchase gold. Conspirators then directed couriers working on behalf of the conspiracy to meet with victims in person in order to retrieve the gold. Conspirators instructed couriers to schedule travel plans, which often included booking flights and making hotel reservations, to the towns where victims were located. Couriers worked with a "handler," also working on behalf of the conspiracy, who

sometimes provided transportation to the couriers. The handler would transport the courier to a parking lot near the victim's residence. The courier would then take a ride sharing service to the victim's residence to pick up gold from the victim. Once the courier retrieved gold from a victim, the courier delivered the gold to the handler, who would subsequently ship the gold to other conspirators.

6. In at least one instance, conspirators instructed a courier to take a personal vehicle to retrieve gold from a victim at the victim's residence. Conspirators then instructed the courier to meet with a handler to transfer the gold to the handler.

7. Conspirators provided couriers with detailed information regarding the victims, including names, residential addresses, and driver's license images. Conspirators instructed couriers to provide victims with a false name. Conspirators gave both the victims and the couriers a password to exchange during the gold pickups, steps which were intended to provide the victims with a false sense of security regarding the transaction.

8. Defendants Dariona Lambert ("Lambert") and Zhamoniq Stevens ("Stevens") worked as couriers on behalf of the conspiracy, and travelled to victims' residences in order to retrieve gold from the victims. One of these victims was located in the Eastern District of Missouri.

9. After Lambert and Stevens completed a pickup from a victim, conspirators would instruct the handler to pay Lambert and Stevens cash.

10. Defendant Chintankumar Parekh ("Parkeh"), Defendant Mehulkumar Darji ("Darji") and Defendant Sital Singh ("Singh") worked as handlers on behalf of the conspiracy, and rented vehicles that they then used to transport couriers to complete gold bar pickups.

11. Conspirators, including Lambert, Stevens, Parekh, Darji and Singh communicated about the scheme with each other through various means, including electronic messages exchanged via WhatsApp.

12. Lambert, Stevens, Parekh, Darji, Singh and other conspirators caused the transmission of interstate wire communications, including WhatsApp messages, flight reservations, hotel reservations, and car rental reservations, in furtherance of the scheme.

13. Parekh worked as a handler in gold bar pickups from victims in Yuma, AZ, Scottsdale, AZ, Placentia, CA, La Jolla, CA, Largo, FL, Chapel Hill, NC, Pittsburgh, PA, and St. Louis, MO.

14. Singh worked a handler in gold bar pickups from victims in Collierville, TN, Universal City, TX, and Greendale, WI.

15. Darji worked as a handler in gold bar pickups from victims in Scottsdale, AZ, Largo, FL and La Jolla, CA, and also received three separate FedEx packages containing gold obtained from victim D.K. in Largo, FL.

16. Lambert worked as a courier in gold pickups from victims in Scottsdale, AZ, Placentia, CA, La Jolla, CA, Largo, FL, Hanover, MA, St. Louis, MO, Erie, PA, and Universal City, TX.

17. Stevens worked as a courier in gold bar pickups from victims in Yuma, AZ, La Jolla, CA, Oxnard, CA, Largo, FL, Long Island, NY, Cincinnati, OH, Collierville, TN, and Greendale, WI.

18. Using the method described above, conspirators, including Lambert, Stevens, Parekh, Darji and Singh defrauded victims in numerous states, including Arizona, California, Massachusetts, Pennsylvania, Tennessee, Wisconsin, Texas, North Carolina, Florida and Missouri, in an amount exceeding $8,000,000.00.

**<u>Defrauding Victim LML in the Eastern District of Missouri</u>**

19. In or about March 2024, conspirators contacted Victim LML, an 82-year-old resident of St. Louis, Missouri, in the Eastern District of Missouri. During the multiple conversations that conspirators had with LML, the conspirators falsely represented their identities

as representatives from a computer software support team. Conspirators also falsely advised victim LML that her financial accounts had been compromised, and that victim LML needed to pay money to prevent her funds from being stolen.

20. Conspirators further instructed victim LML that she needed to open new bank accounts, transfer her money into those accounts, and send a wire transfer of funds to an account held overseas in order to prevent the funds from being stolen. Conspirators also instructed victim LML to withdraw cash from her bank accounts in order to purchase approximately $250,000 in gold, gold which conspirators instructed victim LML an individual would come to her residence in order to retrieve.

21. As part of her role in the conspiracy, on May 1, 2024, Lambert flew from Gainesville, Florida to St. Louis, Missouri where Lambert and Parekh stayed at hotels located near Lambert International Airport. Parekh rented a car that he used to drive Lambert to a parking lot near victim LML's residence, from which Lambert then took an Uber vehicle to victim LML's residence for the purpose of retrieving the $250,000 in gold victim LML had purchased.

22. When Lambert was intercepted by law enforcement agents at victim LML's residence, she sent a WhatsApp message to the conspirators, saying "police."

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Section 1343, or conspiracy to commit such offense, as set forth in Count 1, the Defendant(s) shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

2. Subject to forfeiture is a sum of money equal to the total value of property, real or

personal, constituting or derived from any proceeds traceable to such violation.

3. If any of the property described above, as a result of any act or omission of the Defendant(s):

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

________________________
FOREPERSON

SAYLER A. FLEMING
United States Attorney

________________________
Gwendolyn E. Carroll #4657003NY
Assistant United States Attorney