IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) No. 4:24-CR-299 MTS |
| | ) |
| DARIONA LAMBERT | ) |
| | ) |
|     Defendant. | ) |

**DARIONA LAMBERT'S SENTENCING MEMORANDUM**

Dariona Lambert, through counsel, hereby requests a sentence of probation, which constitutes a downward variance from the United States Sentencing Guidelines (USSG) range. In support, the defense states the following:

1. **Avoiding Unwarranted Sentencing Disparity:** The sentencing decision is based on an assessment of the individual case. *Gall v. United States,* 522 U.S. 38, 52 (2007). "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue. " *Id.*

   a. The instant crime involves human failings and resultant harm of enormous magnitude. The offense is most serious.

1

b. Yet, in comparable cases federal defendants usually receive sentences below the USSG range. *Exhibit A.*

c. For example, during fiscal years 2020 through 2024, 241 federal defendants received sentences under the same USSG section applicable in this case (§ 2B1.1), with the same Total Offense Level (26) and Criminal History Category ( I ), resulting in a USSG range of 63-78 months imprisonment. *See* Exhibit A. Of those 241 defendants, 6 received either a non-custodial sentence or a §5K1.1 downward departure. *Id.* Of the remaining 235 defendants who received a sentence of imprisonment, the average length of imprisonment imposed was 49 months. *Id.*

d. These statistics do <u>not</u> reflect a recommended sentence from the United States Sentencing Commission. *See* https://www.ussc.gov/guidelines/judiciary-sentencing-information. However, they do provide guidance when deciding whether a downward variance will result in unwarranted disparity.

e. The defense anticipates the government will seek a sentence of 20 months. To the government's credit, the prosecution recognizes Ms. Lambert's lack of criminal history, relatively low culpability, and the presence of numerous mitigating factors. But the defense expects the government to argue that Ms. Lambert deserves a sentence 2-months greater than Co-Defendant Stevens received because Ms. Lambert "recruited" Ms. Stevens. The defense respectfully disagrees and avers that a sentence of probation will not result in unwarranted disparity.

f.  First, as explained in greater detail below, Ms. Lambert did not advertise the position to anyone or contact Co-Defendant Stevens with the purpose of recruiting her. Instead, Ms. Lambert merely passed along her "boss's" contact information to Co-Defendant Stevens when Stevens asked Ms. Lambert about the exciting new job she saw on Ms. Lambert's social media accounts.

g.  Second, Ms. Lambert and Ms. Stevens were both young, vulnerable, targets of a large, sophisticated, multi-national fraud scheme. But they have material differences in their respective histories and characteristics.

    i.  Co-Defendant Stevens is older than Ms. Lambert.

    ii.  Ms. Lambert has no prior juvenile or adult criminal history.

    iii.  Ms. Lambert has no prior convictions or accusations of violence.

    iv.  Ms. Lambert has sole custody of a minor child.

    v.  Ms. Lambert's father died when Ms. Lambert was 11 years old, leaving her in great financial need and without the support of 2 parents.

    vi.  Ms. Lambert was not granted the opportunity for self-surrender, and once she was arrested she complied fully with the officers. She never attempted to avoid detection or evade arrest.

    vii.  Ms. Lambert remained fully compliant in her 20 months on pretrial supervision, and she has used this time to earn vocational training and certifications.

3

2.  **Ms. Lambert's History & Characteristics:**

   a.  **Lack of Criminal History:** Ms. Lambert has no prior criminal history.

   b.  **Non-Violent Offender:** Ms. Lambert has no violent criminal history. She has no history of violence, and her limited role in the instant offense involved no alleged violence or threats of violence.

   c.  **Aberrant Behavior:** The instant offense represents truly aberrant behavior for Ms. Lambert who has no prior criminal involvement, arrests, or accusations of fraudulent behavior. Ms. Lambert overcame numerous challenges in her young adult life, and despite long odds she has continued her education and vocational training. The instant offense is most serious, but it constitutes aberrant behavior for Ms. Lambert.

   d.  **Mental and Emotional Condition:** Ms. Lambert suffers from Attention Deficit Disorder (ADHD), Post Traumatic Stress Disorder (PTSD), and Depressive Disorder. She received accommodation during her formal education because of her ADHD. She has suffered from intense bouts of depression and PTSD symptoms since her father died when she was 11 years old. After her father's death, she saw a school therapist daily during her formal education.

   e.  **Family Ties and Responsibilities:** Ms. Lambert is the sole custodian and primary caregiver for her 2-year-old son.

   f.  **Financial Challenges:** Ms. Lambert grew up near Gainesville, Florida. Her father was a gospel singer, and her mother was a nurse's assistant.

They lived separate from one another, and Ms. Lambert lived with her mother and her 2 maternal siblings. Her family always struggled for money. But her parents kept the family solvent and secure.



*1* Dariona's Father, Darrell Lambert, Pictured Standing Far Left

Then in 2012, when Ms. Lambert was 11 years old, her father died from cancer. Money became scarce. Ms. Lambert no longer enjoyed the feeling of security and support her family used to provide.

4 years later, when Ms. Lambert was 15 years old, she became pregnant and gave birth to her daughter. Her daughter was born with liver disease and was missing part of her lower bowel. She required extensive and costly medical care. What little money Ms. Lambert could earn went toward her daughter's treatment. All of Ms. Lambert's time was spent either caring for her daughter or attending high school. Ms. Lambert nevertheless graduated from high school in November of 2018. She began working to support her daughter's medical needs. But in 2020, her daughter's health deteriorated and she died, on March 12, 2020 at the young age of 3.

g.  Ms. Lambert began working as a Pharmacy Coordinator that year. She thrived in this position, but she was laid off in 2022 due to the COVID-19 Pandemic.

5

h.  In 2023, the father of Ms. Lambert's daughter was killed by gun violence, and the modest financial support he provided for Ms. Lambert ceased. Ms. Lambert began working as a medical tech at HCA North Florida Hospital, but she quit that position when she became pregnant and gave birth to her son.

i.  Ms. Lambert began 2024 with financial struggles. She was the sole parent and caregiver of her son. Though she worked when she was able, she could not find a position with adequate pay to outpace the cost of childcare and time away from her child. She lived in a small one-bedroom house with her mother and her son, and she felt like she was a burden on her mother who earned modest pay as an in-home nurses's aid.

3.  **The Nature and Circumstances of the Offense:**

a.  In January of 2024, Ms. Lambert noticed that one of her friends from Orlando began posting pictures on social media that showed an exciting and lucrative career. The friend posted pictures from different cities around the United States of her driving in nice rental cars and enjoying meals out at restaurants. Ms. Lambert asked what she was doing for work.

b.  Ms. Lambert's friend told Dariona she would pass along Dariona's contact information to her boss. Soon a woman called Dariona with a job prospect. There was a phone interview, and then the woman offered Dariona a job, just like her friend's, picking up packages from people around the country in exchange for immediate payment via banking apps.

6

She was promised all-expenses paid travel, transportation, and future opportunities in "the company."

c.  Ms. Lambert began work right away. And just like her friend, she began to post her travels and earnings on social media. At no time did she advertise a position with the organization or invite people to contact her to find out how she was making money. She merely posted what, at age 22, seemed like an exciting new chapter of her life.

d.  Soon, Ms. Lambert was contacted by her cousin, Co-Defendant Stevens. The pair had a close relationship. Ms. Stevens said that she was living out of her car. She was in general dire straits, and she was interested in how Ms. Lambert was making so much money. Ms. Lambert then put Ms. Stevens in touch with her "supervisor" within the organization. This was the extent of any "recruitment" of Ms. Stevens by Ms. Lambert. Ms. Lambert simply passed along contact information.

e.  To be clear, by this point, Ms. Lambert suspected that her activity with the organization was illegal because of the amount of money she was being paid and due to the secretive nature of the transactions and deliveries involved. Knowing that she was likely engaging in illegal activity, she continued to make the deliveries for 3 and a half months, and she is guilty of the instant offense. But it is also true that Ms. Lambert did not know the full objective or scope of the conspiracy. She was kept from knowing this to protect those higher up in the organization. She was not a manager, leader, organizer, or recruiter.

Instead, she was a mere blind courier on the lowest rung of a sophisticated, multi-million-dollar, international fraud scheme that preyed upon desperate vulnerable young women to complete the riskiest parts of the scheme.

f.  In May of 2024, Ms. Lambert was arrested during a delivery transaction in St. Louis. She was questioned, then released. But she was not given the benefit of self-surrender. Instead, the next month Ms. Lambert was arrested on the federal warrant for this case. She fully complied with the arrest. She was granted bond 3 days later, on June, 20, 2024. And she has remained compliant on bond ever since.

g.  Since being released on bond, she has earned her Certified Nurses Assistant License. *Exhibit B.*  She has also studied for and passed her 1 FL Sales Associate Pre-License for Real Estate Sales in the State of Florida. *Exhibit C.* She currently shadows her aunt to learn the real estate business with the permission of the pretrial services office. Upon resolution of this case, Ms.

Lambert plans to complete the final license exam and, once fully licensed, join her aunt's real estate business.

*3* Dariona with her son, after her arrest. He attended CNA classes with Dariona (see Figure 2) and accompanies her on her real estate job shadow days.    *2*

8

4.  **Protection of the Public:** Ms. Lambert is now pursuing a career in real estate sales. Ms. Lambert also has a fallback plan to pursue her Commercial Driver's License so she can work as a logistics delivery driver if necessary. She will be required to disclose her charges to any future employers. A lengthy period of supervision will ensure that she is monitored, that she receives any counseling the probation office deems appropriate, and that she has structure and supervision to keep her on the path to gainful employment. Ms. Lambert's federal supervision, her realistic plans for gainful employment, the lasting collateral consequences of her conviction, and her remorse and resolve to never engage in similar conduct again, will adequately protect the public. Ms. Lambert has served 3 days in jail, and 20 months on pretrial supervision since her arrest for this, the first and only criminal case of her life.

WHEREFORE, Ms. Lambert respectfully requests a sentence of probation for a period of 5 years.

Respectfully submitted,

/s/Charles J. Banks
CHARLES J. BANKS, #60027MO
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Charles_Banks@fd.org

ATTORNEY FOR DEFENDANT

9

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Gwendolyn Carroll, Assistant United States Attorney.

/s/Charles J. Banks
CHARLES J. BANKS, #60027MO
Assistant Federal Public Defender